Mia Farber (SBN 131467)
farberm@jacksonlewis.com
Damien P. DeLaney (SBN 246476)
damien.delaney@jacksonlewis.com
Vi Applen (SBN 273623)
vi.applen@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:  (213) 689-0404
Facsimile:  (213) 689-0430

Attorneys for Defendants
BEHR PAINT CORPORATION and
BEHR PROCESS CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN MCBAIN, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEHR PAINT CORPORATION, a California Corporation, BEHR PROCESS CORPORATION, a California Corporation; and MASCO CORPORATION, a Delaware Corporation,<br><br>Defendants. | CASE NO.:  3:16-CV-07036-MEJ<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Richard Maus; Declaration of Vi Applen; and [Proposed] Order Granting Motion to Compel Arbitration or Alternatively to Stay Action]<br><br>Date:              August 3, 2017<br>Time:             10:00 a.m.<br>Courtroom:    B, 15th Floor<br><br>Complaint filed:      December 8, 2016 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 3, 2017 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom B of the above-entitled Court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102, Defendants Behr Paint Corporation and Behr Process Corporation (collectively, "Defendants"), will, and hereby do, move this Court as follows:

For an order compelling Plaintiff Ryan McBain, and opt-in Plaintiffs Tyler Nix and Steven Bragunier (collectively "Plaintiffs") to: (1) arbitrate their claims arising out of Plaintiffs' alleged employment with Defendants, including all claims and causes of action made by Plaintiffs against Defendants in Plaintiffs' Complaint in this Action, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, individually and stay the class claims; or, in the alternative, (2) staying this entire action pending the United States Supreme Court's review of the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), cert. granted (U.S. Jan. 13, 2017).

This Motion to Compel Arbitration and Dismiss Case Without Prejudice ("Motion") is made pursuant to valid and enforceable arbitration agreements signed by Plaintiffs, which provide that all disputes arising from Plaintiffs' employment relationships must be resolved by binding arbitration in accordance with the FAA, 9 U.S.C. § 1 *et seq.*, and *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) and its progeny.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Richard Maus, the Declaration of Vi Applen, and the exhibits filed concurrently therewith, and all other previously filed documents in this Action, as well as such other evidence and arguments as may be presented at the hearing on this Motion.

Respectfully submitted,

Dated: June 16, 2017                          JACKSON LEWIS P.C.


By  /s/ Mia Farber
    Mia Farber
    Damien P. DeLaney
    Vi Applen

Attorneys for Defendants
BEHR PAINT CORPORATION and
BEHR PROCESS CORPORATION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................8

II.  STATEMENT OF RELIEF SOUGHT...................................................................9

III.  STATEMENT OF RELEVANT FACTS ...............................................................9

    A.  Plaintiffs Executed Multiple Documents Acknowledging That They Received, Read, Understood, and Agreed to Be Bound By Behr Paint's Dispute Resolution Policy..............................................................................9

    B.  The Dispute Resolution Policy. ................................................................10

    C.  Defendants Engage in Interstate Commerce............................................11

    D.  McBain Files Suit Against Defendants Despite Agreeing to be Bound By The Terms of the DRP. ..............................................................................12

IV.  LEGAL ARGUMENT.........................................................................................13

    A.  Under the FAA and the DRP Plaintiffs' Claims Should Be Compelled to Mediation, and if Necessary Arbitration.................................................13

    B.  Plaintiffs Entered Into Valid Agreements to Arbitrate Their Claims. ................15

    C.  To the Extent *Armendariz* Remains Viable, the DRP Complies with Its Requirements. .........................................................................................16

        1.  The DRP Provides for a Neutral Arbitrator. ................................17

        2.  The DRP Does Not Limit Plaintiff's Ability to Conduct Adequate Discovery .......................................................................................17

        3.  The DRP Requires the Arbitrator Provide a Written Decision.............18

        4.  The DRP Allows the Arbitrator to Grant—If Appropriate—Every Type of Relief Otherwise Available in This Litigation........................18

        5.  Defendants Will Pay the Arbitrator's Costs.................................18

    D.  The DRP is not Procedurally Unconscionable.................................................18

    E.  Plaintiffs Must Individually Arbitrate Their Claims on an Individual Basis....................19

    F.  Defendants Have Not Waived Their Right to Compel Arbitration. ................................21

    G.  If the Court is Not Inclined to Compel Arbitration, It Should Stay the Civil Action Pending the Supreme Court's Decision Regarding the Enforceability of Class Waivers in Arbitration Agreements. ..............................................................23

V.  CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
   513 U.S. 265 (1995)..................................................................................................14

*Andrade v. P.F. Chang's China Bistro, Inc.*
   2013 U.S. Dist. LEXIS 112759 (S.D. Cal. Aug. 9, 2013) ..........................15, 16, 19

*AT&T Mobility LLC v. Concepcion*
   131 S.Ct. 1740 (2011)..................................................................................... *passim*

*Brown v. Dillard's, Inc.*
   430 F.3d 1004 (9th Cir. 2005) ...............................................................................12, 22

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440 (2006)..................................................................................................15

*Cellular Sales of Missouri, LLC v. NLRB*
   824 F.3d 772 (8th Cir. 2016) ....................................................................................20

*Chavarria v. Ralphs Grocery Company*
   733 F.3d 916 (2013)..................................................................................................18

*Circuit City Stores, Inc. v. Adams*
   532 U.S. 105 (2001)..................................................................................................14

*CMAX, Inc. v. Hall*
   300 F.2d 265 (9th Cir. 1962) .................................................................................23, 24

*D.R. Horton, Inc. v. NLRB*
   737 F.3d 344 (5th Cir. 2013) ....................................................................................20

*Daniel v. Paul*
   395 U.S. 298 (1969)..................................................................................................14

*Davis v. Nordstrom, Inc.*
   755 F.3d 1089 (9th Cir. 2014) ...............................................................................15, 16

*Dean Witter Reynolds, Inc. v. Byrd*
   470 U.S. 213 (1985)..................................................................................................15

*Echevarria v. Aerotek, Inc.*
   2017 U.S. Dist. LEXIS 50944 (N.D. Cal. April 3, 2017)..........................................25

*Epic Sys. Corp. v. Lewis*
   2017 U.S. LEXIS 691 (Jan. 13, 2017) ......................................................................21

*Ernst & Young LLP v. Morris*
   2017 U.S. LEXIS 689 (Jan. 13. 2017) ................................................................21

*Fisher v. A.G. Becker Paribas Inc.*
   791 F.2d 691 (9th Cir. 1986) ........................................................................21

*Haisha Corp. v. Sprint Solutions, Inc.*
   2015 U.S. Dist. LEXIS 5579 (S.D. Cal. Jan. 15, 2015)..................................16

*Ho v. Ernst & Young, LLP*
   2011 U.S. Dist. LEXIS 106658 (N.D. Cal. Sep. 20, 2011) ...........................23

*Larroque v. First Advantage Lns Screening Sols., Inc.*
   2016 U.S. Dist. LEXIS 139 (N.D. Cal. Jan. 4, 2016) ...................................24

*Letizia v. Prudential Bache Sec., Inc.*
   802 F.2d 1185 (9th Cir. 1986) ......................................................................22

*Leyva v. Certified Grocers of California, Ltd.*
   593 F.2d 857 (1979).......................................................................................24

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
   363 F.3d 1010 (9th Cir. 2004) ......................................................................15

*Lockyer v. Mirant Corp.*
   398 F.3d 1098 (9th Cir. 2005) ......................................................................22

*Mackall v. Healthsource Global Staffing*
   Inc., No. 16-cv-03810-WHO, Dkt. No. 55 (N.D. Cal. Jan, 18, 2017) ...........25

*Martin v. Yasuda*
   829 F.3d 1118 (2016) ....................................................................................21

*McElrath v. Uber Techs., Inc.*
   No. 16-cv-07241-JSC 2017 U.S. Dist. LEXIS 48419 ...................................25

*Mitsubishi Motors Co. v. Soler Chrysler--Plymouth, Inc.*
   473 U.S. 614 (1985).................................................................................15, 19

*Morris v. Ernst & Young, LLP*
   834 F.3d 975 (9th Cir. 2016) ...........................................................12, 20, 22

*Murphy Oil USA, Inc. v. NLRB*
   808 F.3d 1015 (5th Cir. 2015) ......................................................................20

*NLRB v. Murphy Oil USA, Inc.*
   2017 U.S. LEXIS 680 (Jan. 13, 2017) ..........................................................21

*Perry v. Thomas*
 482 U.S. 483 (1987)................................................................................14

*Preston v. Ferrer*
 552 U.S. 346 (2008)................................................................................20

*Prima Paint Corp. v. Flood Conklin Mfg. Co.*
 388 U.S. 395 (1967)............................................................................13, 14

*Rent-A-Center, W., Inc. v. Jackson*
 561 U.S. 63 (2010)..................................................................................13

*Richards v. Ernst & Young, LLP*
 744 F.3d 1072 (9th Cir. 2013) ..............................................................22, 23

*Rogers v. Royal Caribbean Cruise Line*
 547 F.3d 1148 (9th Cir. 2008) ..................................................................13

*Sovak v. Chugai Pharm. Co.*
 280 F.3d 1266 (9th Cir. 2002) ..............................................................12, 22

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*
 559 U.S. 662 (2010)............................................................................15, 19

*Sutherland v. Ernst & Young LLP*
 726 F.3d 290 (2d Cir. 2013)......................................................................20

*Volt Info. Sciences, Inc. v. Bd. Of Trustees*
 489 U.S. 468 (1989)........................................................................15, 19, 20

*Whitworth v. SolarCity Corp.*
 2017 U.S. Dist. LEXIS 73842, . (N.D. Cal. May 15, 2017) ...........................25

**California Cases**

*A & M Produce Co. v. FMC Corp.*
 135 Cal.App.3d 473 (1982) .....................................................................18

*Armendariz v. Found. Health Psychare Servs.*
 24 Cal.4th 83 (2000) ......................................................................8, 16, 17, 18

*Iskanian v. CLS Transportation Los Angeles, LLC*
 59 Cal.4th 348 (2014)..............................................................................20

*Lagatree v. Luce, Forward, Hamilton &Scripps LLP*
 74 Cal.App.4th 1105 (1999) ....................................................................19

*Parada v. Super. Ct.*
 176 Cal.App.4th 1554 (2009) ..................................................................19

1

**Federal Statutes**

2

9 U.S.C.
    § 1 et seq. ..........................................................................................................8, 15
    § 2 .............................................................................................................................13

3

4

29 U.S.C.
    § 216(b)......................................................................................................................8

5

6

**Other Authorities**

7

AAA, Employment Arbitration Rules and Mediation Procedures
    Rule 39(c)..........................................................................................................11, 18

8

AAA, Employment Dispute Resolution Rules
    Rule 9................................................................................................................17, 18

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On December 8, 2016, Plaintiff Ryan McBain ("McBain"), a current employee of Behr Paint Corporation ("Behr Paint") brought this action against Defendants Behr Paint Corporation and Behr Process Corporation ("Defendants") asserting claims for a variety of alleged violations of the federal Fair Labor Standards Act ("FLSA") and the California Labor Code.[1]  On February 13, 2017, and April 10, 2017, respectively, pursuant to 29 U.S.C. § 216(b) of the FLSA, John Tyler Nix ("Nix") and Steven Bragunier ("Bragunier") filed notices of consent to join the action.  (hereinafter McBain, Nix, and Bragunier are referred to collectively as "Plaintiffs")  However, Plaintiffs all agreed, in writing, to utilize Behr Paint's Dispute Resolution Program ("DRP"), the last step of which is final and binding arbitration, for all employment related disputes against Behr Paint. (*See* Declaration of Richard Maus ("Maus Decl."), ¶¶9-21.) Plaintiffs also agreed to bring any and all claims arising from their employment in an individual capacity only and waive their right to pursue class, representative, or collective claims in arbitration. (Maus Decl., ¶14; Exhibit ("Exh." C, at p.5.)  As a result, Plaintiffs are precluded from circumventing the mandatory mediation and arbitration procedures set forth in the DRP by litigating their wage and hour claims against Defendants in civil court.

Thus, this Court should hold Plaintiffs to their agreements to arbitrate their claims on an individual basis. Indeed, the DRP is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), and applicable precedent thereon, including *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011) and its progeny.  Furthermore, the DRP is not unconscionable because Plaintiffs all voluntarily agreed to be bound by its terms, the DRP provides for a neutral arbitrator and adequate discovery, and does not require employees to pay unreasonable costs or the arbitrator's costs or fees. *See Armendariz v. Found. Health Psychare Servs.*, 24 Cal. 4th 83, 102 (2000).

Accordingly, Defendants respectfully request that this Court compel this matter to arbitration and stay the judicial proceedings until the completion of arbitration.  Alternatively, Defendants request that

---

[1] Plaintiff also filed suit against Masco Corporation ("Masco") based on the joint employer theory of liability. On April 3, 2017, this Court granted Defendants Motion to Dismiss for Failure to State a Claim as to Masco with leave to amend. Plaintiff did not amend his complaint. Thus, Masco is no longer a party to this action.

this Court immediately stay all further proceedings of the civil action until the United States Supreme Court determines the enforceability of class or collective-action waivers under the FAA in *National Labor Relations Board v. Murphy Oil USA* (No. 16-307), *Epic Systems Corp. v. Lewis* (No. 16-285), and *Ernst & Young LLP v. Morris* (No. 16-300) (consolidated for oral argument).

## II.   STATEMENT OF RELIEF SOUGHT

Defendants seek an order compelling Plaintiffs to submit their individual claims to arbitration and staying the class claims pending the completion of the arbitration proceedings. In the alternative, Defendants request an order staying the entire action until the Supreme Court issues a decision in *Morris*.

## III.   STATEMENT OF RELEVANT FACTS

### A.   Plaintiffs Executed Multiple Documents Acknowledging That They Received, Read, Understood, and Agreed to Be Bound By Behr Paint's Dispute Resolution Policy.

Bragunier and McBain began working for Behr Paint on January 4, 2008 and April 5, 2010, respectively.  (Maus Decl., ¶¶9, 12.)  Before beginning employment, both acknowledged receipt of the then existing DRP in writing on December 18, 2007 and February 10, 2010, respectively.[2]  (*Id.*; Exhs. A and B.)

In December 2010, Behr Paint updated the DRP.  (*Id.* at ¶14; Exh. C.)  McBain and Bragunier again acknowledged receipt and agreed to be bound by the terms of the updated DRP.  McBain manifested his acceptance of the updated DRP by signing additional policy acknowledgement forms on April 13, 2013 and April 3, 2014.  (*Id.* at ¶15; Exhs. D and E.)  Bragunier manifested his acceptance of the updated DRP by signing additional policy acknowledgement forms on April 13, 2013 and April 6, 2014.  (*Id.* at ¶16; Exhs. F and G.)

On August 18, 2014, Tyler Nix began working for Behr Paint.  (*Id.* at ¶18.)  Prior to the commencement of his employment, Nix acknowledged receipt of the DRP on July 7, 2014.  (*Id.*;

---

[2] Plaintiffs were employed by Behr Paint. Behr Paint and Behr Process are wholly owned by Masco Corporation. Behr Paint and Behr Process are affiliated companies. As the Agreement is between Behr Paint "or any of the Company's subsidiaries, divisions, affiliates" both Behr Paint and Behr Process are parties to the agreement.

Exh. H.)  In addition, a month into his employment, on August 13, 2014, Nix again acknowledged receipt and agreed to be bound by the terms of the DRP.  (*Id.* at ¶ 21; Exh. I.)

## B.    The Dispute Resolution Policy.

The DRP, to which Plaintiffs expressly agreed, is bilateral and requires the Parties to arbitrate the claims asserted in the instant action.  Specifically, the DRP provides:

> The disputes covered by this Policy include any claim under applicable state or federal common or statutory law the Company might have against the employee, including, for example, theft of property, misuse of Company information, and fraud.  Also included is any claim under applicable state or federal common or statutory law an employee might have against the Company including, for example, all claims for: wages or other compensation due; breach of any contract; violations of public policy; negligence; intentional torts; any alleged exception to the workers' compensation laws; defamation; all forms of unlawful discrimination and retaliation (including, but not limited to, race, color, sex, religion, national origin, disability, marital status or age); denial of fringe benefits; violation of any federal, state, or other governmental law, statute, regulation, or ordinance; and, any other matters arising under common or statutory law.  Disputes covered by this Policy shall also include any claim an employee might have against any officer, director, employee, or agent of the Company, or any of the Company's subsidiaries, divisions, affiliates, if that claim in any way arises out of or relates to the application process, the employment relationship, or the termination of the employment relationship.  It is the intent of all parties to submit to mediation and arbitration, to the fullest extent permitted by law, all covered disputes and claims the Company might have against an employee and all covered disputes and claims an employee might have against the Company and any of the Company's subsidiaries, divisions, affiliates, officers, directors, employees, and agents.  Because this Policy promotes mediation and arbitration as the exclusive remedy for claims and disputes covered by this Policy, the Company and the employee agree to be bound by those laws best promoting the enforceability of mediation and arbitration agreements, including the Federal Arbitration Act, federal common law, and any applicable state laws promoting arbitration.

(*Id.* at ¶14; Exh. C, at p 1.)

In addition to the provisions set forth above, the DRP includes the following relevant provisions:

- "The Arbitrator will be independent and impartial and no person shall serve as an Arbitrator who has any financial or personal interest in the result of the proceeding . . . In selecting an Arbitrator, the AAA shall be required to send each party an initial list of ten potential Arbitrators.  If for any reason an appointment cannot be made from this list, the AAA shall promptly send each party a second list of ten potential Arbitrators.  If for any reason an appointment cannot be made from the

second list, the AAA shall have the power to make an appointment from among other members of the panel without submitting an additional list." (*Id.*; Exh. C, at p 4.)

- "The parties are encouraged to agree upon the extent of discovery that shall take place prior to the arbitration hearing . . . . The scope and extent of discovery shall be consistent with the AAA's rules for the Resolution of Employment Disputes." (*Id.* at p. 4.)

- "[T]he Company will pay all of the expenses and fees of the Mediator. The Company will pay all of the expenses and fees of the Arbitrator. The Company will also pay the AAA's arbitration administrative fees." (*Id.* at p. 3.)

- "[T]he Arbitrator shall have the same power and authority (and no more) as would a judge in court to grant monetary damages or such other relief (including reasonable costs and attorney fees) as may be in conformance with applicable principles of common, decisional, and statutory law in the relevant jurisdiction." (*Id.* at p. 5.)

- The DRP requires the Arbitrator to maintain his or her written decision for a period of one year after the Arbitrator's award is issued. (*Id.* at p. 5.)

- The DRP also incorporates the AAA's Employment Arbitration Rules and Mediation Procedures, which also requires the Arbitrator to issue a written arbitration award. (*Id.* at p. 5; see also Declaration of Vi Applen ("Applen Decl.", at ¶2; Exh. J (Rule 39(c), at p.29).)

Finally, the DRP contains a class-waiver provision which states:

Except as otherwise required under applicable law, the employee and Company agree that: class action, collective action and representative action procedures shall not be asserted, nor will they apply in any proceeding under this Policy. Neither the Company nor the employee will assert class action or representative action claims under this Policy; each shall only submit their own individual claims under this Policy and will not seek to represent the interests of any other person or entity. (Maus Decl. at ¶14; Exh. C, at p. 5.)

## C.   **Defendants Engage in Interstate Commerce.**

Defendants are engaged in commerce throughout the United States. Behr Process is a leading national manufacturer and distributor of interior and exterior paint and related products.

(*Id.*, ¶4.)  Behr Process sells and distributes its products throughout the United States, Canada, Mexico and Chile.  (*Id.*)  Behr Paint, through a service agreement with Behr Process, promotes and educates consumers on the attributes of Behr products to drive and promotes sales of those products throughout the United States.  (*Id.*)

**D.    McBain Files Suit Against Defendants Despite Agreeing to be Bound By The Terms of the DRP.**

On December 8, 2016, despite signing his agreement to be bound by the terms of the DRP, McBain filed the Complaint in this action before this Court.  (*See* generally Dkt. 1.)  In the Complaint, Plaintiff alleges that Behr Paint and Behr Process are his joint employer under the FLSA and the California Labor Code.

Although Behr Paint ordinarily would have moved to compel arbitration immediately, roughly three months prior to the filing of this action, the Ninth Circuit decided *Morris*.  The *Morris* decision held that a class action waiver similar to the one contained in the DRP violated section 7 of the National Labor Relations Act ("NLRA") and was thus unenforceable.  On January 13, 2017, however, while Defendants' initial pleading was still pending, the Supreme Court granted *certiorari* to review the *Morris* decision.

On February 7, 2017, Defendants filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6) raising a jurisdictional challenge to the Complaint.  (*See* generally Dkt. 14.)  Anticipating that Plaintiff would likely argue that by filing of such a motion Defendants waived their right to arbitration, Defendants specifically asserted the following in the motion to dismiss:

> Plaintiff signed an arbitration agreement with a collective/class and representative action waiver during his employment with Defendant Behr Paint Corp. However, based on the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), Defendants recognize that a motion to compel to enforce the arbitration agreement and waivers would be futile.  By filing this motion to dismiss, Defendants are not waiving the right to compel arbitration. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270-71 (9th Cir. 2002) (rejecting argument that defendant waived right to arbitrate because plaintiff failed to show how he was prejudiced by defendant's filing of a motion to dismiss for failure to state a claim); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (noting that filing motion to dismiss does not waive right to move to compel arbitration.) (Dkt. 14, at p. 2, n. 1.)

1    On April 3, 2017, this Court granted Defendants' motion in part. (*See* generally Court's Order, Dkt.

2    27.) This Court dismissed, without prejudice, all of Plaintiff's state law claims except for Plaintiff's state

3    overtime and Unfair Competition Law claim to the extent it was based on Plaintiff's overtime claims

4    pursuant to the FLSA and the California Labor Code. (*Id.*)

5    On May 11, 2017, the Parties filed a Joint Rule 26(f) Report. (*See* generally Dkt. 37.) In the

6    report, Defendants maintained that "this dispute must be submitted to mediation and binding arbitration

7    according to the provision of Behr's Dispute Resolution Program." (*Id.*) Defendants noted that they are

8    contemplating filing a motion to compel arbitration, and specifically disputed Plaintiff's contention that

9    Defendants have waived the right to compel arbitration in this matter. (*Id.*)

10   This Court held a scheduling conference on May 18, 2017. During the scheduling conference

11   counsel for Defendants' informed this Court of Defendants' intent to file a Motion to Compel Arbitration.

12   On May 19, 2017, in its Preliminary Case Management Conference Order, this Court ordered Defendants

13   to file a motion to compel arbitration no later than June 22, 2017. (*See* generally Dkt. 41.) Thus, the

14   instant motion follows.

15   **IV.   LEGAL ARGUMENT**

16   **A.   Under the FAA and the DRP Plaintiffs' Claims Should Be Compelled to Mediation, and if Necessary Arbitration.**

17

18   Defendants are entitled to an order compelling mediation[3], and if necessary arbitration of

19   Plaintiffs' claims consistent with the FAA, which broadly provides that a written provision in a "contract

20   *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out

21   of such contract… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

22   in equity for the revocation of any contract." 9 U.S.C. § 2; *Prima Paint Corp. v. Flood Conklin Mfg. Co.*,

23   388 U.S. 395, 401-402 (1967), n. 7; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Rogers*

24   *v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1153-1154 (9th Cir. 2008).

25   Applicability of the FAA is significant because it preempts state law contrary to it, including

26   California cases defining the unconscionability defense to contract enforcement as it applies to arbitration

27

28   ─────────────
     [3] The DRP contains a two-step dispute resolution process. The first-step is mediation.

agreements.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995) (it is well established law "that the Federal Arbitration Act pre-empts state law [and] that state courts cannot apply state statutes that invalidate arbitration agreements").

To fall within the ambit of the FAA, a party to an arbitration agreement need only establish that it sells its services in the stream of interstate commerce or its activities affect interstate commerce – *even if Plaintiff was not directly involved in its interstate transactions*.  *Allied-Bruce*, 513 U.S. at 273, 268-282 (holding that the FAA governed arbitration clause in residential termite protection plan, even though all services provided were intra-state).  Focusing on the phrase "involving commerce," the U.S. Supreme Court has determined that the FAA "cover[s] more than 'only persons or activities within the flow of interstate commerce' . . . 'involving' is broad and is indeed the functional equivalent of 'affecting.'"  *Id* at 273-274.  Relying upon the expansive reading of "involving commerce," courts have held that the FAA governs arbitration agreements where the underlying contract *facilitates* interstate commercial transactions or directly or *indirectly* affects commerce between the states.  *Prima Paint Corp.*, 388 U.S. at 401-402, n. 7.  Ultimately, Defendants need only establish that it buys products or sells merchandise or services in the stream of commerce, regardless of whether Plaintiff himself was directly involved in such interstate operations.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109-18 (2001);  *Daniel v. Paul*, 395 U.S. 298, 305 (1969).

Moreover, on several occasions, the United States Supreme Court expressly recognized that the FAA applies to arbitration agreements contained in employment contracts.  *Circuit City Stores*, 532 U.S. at 111-13, 122-24 (finding that sales employee's arbitration agreement with employer engaged in nationwide retail business falls within scope of FAA); *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (finding that employment agreement between a stock broker and one of its account executives involves interstate commerce and is subject to the FAA).

Here, Defendants engage in transactions involving interstate commerce on a daily basis.  Behr Process is a leading national manufacturer and distributor of interior and exterior paint and related products. (Maus Decl., ¶4.) Behr Process sells and distributes its products throughout the United States, Canada, Mexico and Chile. (*Id.*) Behr Paint, through a service agreement with Behr Process, promotes

1    and educates consumers on the attributes of Behr products to drive and promotes sales of those products

2    throughout the United States.  (*Id.*)

3         Defendants may invoke the FAA because the DRP has a connection in fact with interstate

4    commerce.  The DRP covers all of Plaintiffs' claims against Behr Paint and its subsidiaries, division, and

5    affiliates.  Behr Process is an affiliate of Behr Paint, and engages in commerce throughout the United

6    States.  Thus, pursuant to the DRP, Defendants are entitled to an order compelling mediation and, if the

7    parties do not resolve this dispute at mediation, arbitration, consistent with the FAA, 9 U.S.C. Section 1

8    *et. seq.*

9         **B.    Plaintiffs Entered Into Valid Agreements to Arbitrate Their Claims.**

10        The DRP is a properly formed and enforceable arbitration agreement under the FAA.  "Under the

11   FAA, the role of the district court is to determine if a valid arbitration agreement exists, and if so, whether

12   the agreement encompasses the dispute at issue." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir.

13   2014); *see Mitsubishi Motors Co. v. Soler Chrysler--Plymouth, Inc.*, 473 U.S. 614, 627-28 (1985). "If the

14   Court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the

15   Court to enforce the arbitration agreement according to its terms." *Andrade v. P.F. Chang's China Bistro,*

16   *Inc.*, No. 12CV2724 JLS JMA, 2013 U.S. Dist. LEXIS 112759, at *10 (S.D. Cal. Aug. 9, 2013) (*citing*

17   *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). The FAA does not

18   allow the Court to exercise discretion; the Court must "direct the parties to proceed to arbitration on issues

19   as to which an agreement has been signed." *See id.* at *10-*11 (*quoting Dean Witter Reynolds, Inc. v.*

20   *Byrd*, 470 U.S. 213, 218 (1985) in stating that FAA "mandates that district courts shall direct the parties"

21   to arbitration).

22        "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."

23   *Concepcion*, 131 S. Ct. at 1752. "[C]ourts must place arbitration agreements on an equal footing with

24   other contracts." *Id.* at 1745 (*citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

25   Accordingly, "arbitrators must 'give effect to the contractual rights and expectations of the parties." *Stolt-*

26   *Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (*quoting Volt Info. Sciences, Inc. v.*

27   *Bd. Of Trustees*, 489 U.S. 468, 479 (1989)).

28

1       Courts must apply state law contract principles in determining the validity of an arbitration

2   agreement. *E.g. Haisha Corp. v. Sprint Solutions, Inc.*, No. 14cv2773-GPC (MDD), 2015 U.S. Dist.

3   LEXIS 5579, at \*9-\*10 (S.D. Cal. Jan. 15, 2015); *Andrade*, 2013 U.S. Dist. LEXIS 112759, at \*9. The

4   "party opposing arbitration bears the burden of establishing the arbitration provision is invalid." *Id.* at \*11.

5       In California, continued employment is sufficient to satisfy the mutual assent and consideration

6   requirements of contract formation. *See e.g. Davis*, 755 F.3d at 1093 ("Where an employee continues in

7   his or her employment after being given notice of the changed terms or conditions, he or she has accepted

8   those new terms or conditions.").

9       By agreeing to be bound by the DRP, Plaintiffs knowingly, voluntarily, and without coercion

10   waived their right to a court and/or jury trial for any dispute subject to the terms of the DRP.  Furthermore,

11   each of Plaintiffs' causes of action falls squarely within the scope of the DRP, and the DRP completely

12   covers Plaintiffs' claims and disputes.  Therefore, the DRP is valid and enforceable, and Plaintiffs' claims

13   fall squarely within the scope of the DRP.

14       **C.**    **To the Extent *Armendariz* Remains Viable, the DRP Complies with Its**

15             **Requirements.**

16       Although the continued viability of the California Supreme Court's decision in  *Armendariz v.*

17   *Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000) is arguably questionable in the wake of

18   *Concepcion*, as *Armendariz* clearly imposes numerous substantive hurdles to the enforcement of

19   agreements to arbitrate employment disputes, the DRP nevertheless complies with the requirements set

20   forth in *Armendariz*.  In *Armendariz*, the California Supreme Court specifically addressed the issue of "the

21   validity of a mandatory employment arbitration agreement . . . which an employer imposes on a

22   prospective or current employee as a condition of employment." *Id.* at 90.  The court held that for an

23   agreement requiring the arbitration of statutory claims to be enforceable it must include the following:

24   (1) a neutral arbitrator; (2) adequate discovery; (3) a written award; (4) make available to the parties all of

25   the types of relief that would otherwise be available in court; and (5) the agreement must "not require

26   employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to

27   the arbitration forum." *Id.* at 102-103.  Furthermore, "a mandatory Agreement that contains within its

28

scope the arbitration of FEHA claims impliedly obliges the employer to pay all costs that are unique to arbitration." *Id.* at 113.

Even assuming *Armendariz's* continued validity, the DRP fully complies with each of the *Armendariz* factors.

### 1.   The DRP Provides for a Neutral Arbitrator.

Here, consistent with *Armendariz*, the DRP provides for the joint selection and mutual agreement of a neutral arbitrator. (*See* Maus Decl., at ¶14; Exh. C, at p. 4.)   Specifically, the DRP calls for the appointment of a single, neutral Arbitrator knowledgeable in employment law who shall follow applicable state and federal law. Additionally, the DRP requires the Arbitrator to promptly disclose in writing to the parties and to the AAA any circumstance that would prevent the Arbitrator from acting independently and impartially. (*Id.*) The DRP further provides a process by which either party may request disqualification of an Arbitrator.   If the non-challenging party does not agree to the requested disqualification or the Arbitrator does not agree to voluntarily withdraw, the challenge to the Arbitrator is then decided by the AAA. (*Id.*)

Thus, because the DRP to which Plaintiffs agreed provides for the mutual selection of a neutral arbitrator, the first *Armendariz* requirement is established.

### 2.   The DRP Does Not Limit Plaintiff's Ability to Conduct Adequate Discovery

The DRP provides the opportunity to conduct adequate and meaningful discovery and does not limit statutory remedies, thereby satisfying the *Armendariz* requirements.   The DRP provides the scope and extent of discovery shall be consistent with the AAA's rules regarding employment disputes. (*Id.*) Specifically, the AAA's Employment Dispute Resolution Rules in effect at the time this dispute arose state "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document productions, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."[4] (*See id.*; *see also* Applen Decl., at ¶2; Exh. J (Rule 9, at p. 19).)

---

[4] The DRP further provides that "Copies of the applicable AAA rules may be obtained from the Company's Human Resources Department or from the AAA at www.adr.org." (*See* Maus Decl., at ¶11; Exh. D, at p. 2.)

Thus, the DRP satisfies the second *Armendariz* requirement that there be appropriate discovery mechanisms.

### 3.      The DRP Requires the Arbitrator Provide a Written Decision

The DRP requires the Arbitrator to issue a written decision, which is also consistent with *Armendariz*. Specifically, the AAA's Employment Arbitration Rules and Mediation Procedures, which are incorporated into the DRP, state: "[t]he award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law." (*See id.*; *see also* Applen Decl., at ¶2; Exh. J (Rule 39(c), at p. 29). Moreover, the DRP requires the Arbitrator to maintain his written decision for a period of one year and be made part of the record of the arbitration. (Maus Decl. at ¶14; Exh. C, at p. 5.)

### 4.      The DRP Allows the Arbitrator to Grant—If Appropriate—Every Type of Relief Otherwise Available in This Litigation

The DRP authorizes the Arbitrator to award any form of remedy or damages that would otherwise be available in a court. Specifically, the DRP states "the Arbitrator shall have the same power and authority (and no more) as would a judge in court to grant monetary damages or such other relief (including reasonable costs and attorney fees) as may be in conformance with applicable principles of common, decisional, and statutory law in the relevant jurisdiction." (*See id.* at p. 5.) Thus, the DRP provides Plaintiffs the ability to obtain every statutory remedy otherwise available in court.

### 5.      Defendants Will Pay the Arbitrator's Costs.

Also, consistent with *Armendariz*, the DRP provides that the Company will pay the expenses and fees of the Arbitrator and the AAA's arbitration (and mediation) administrative fees. (*See id.* at p. 3.)

### D.      The DRP is not Procedurally Unconscionable.

The DRP is not procedurally unconscionable because it is not oppressive or surprising. "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Chavarria v. Ralphs Grocery Company*, 733 F.3d 916, 922 (2013) (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.*

(citing *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1571 (2009)). A "compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis." *Andrade*, 2013 U.S. Dist. LEXIS 112759, at \*22-\*23 (quoting *Lagatree v. Luce, Forward, Hamilton &Scripps LLP*, 74 Cal. App. 4th 1105, 1127 (1999)).

Here, Plaintiffs were not coerced into signing acknowledgment of the DRP, and the terms of the DRP are not surprising. The terms of the DRP are clearly and unambiguously stated in separate and distinct paragraphs. Moreover, the DRP clearly states that Plaintiffs waived their rights to have their claims adjudicated by a judge or jury in court by accepting their terms. Finally, the DRP clearly states that the arbitration would proceed according to the AAA Employment Arbitration Rules, which were incorporated by reference into the agreement, and which were available to Plaintiffs' from the Company's Human Resources Department or from the AAA at www.adr.org.

Thus, Plaintiffs made fully informed and voluntary decisions to be bound by the DRP.

### E. Plaintiffs Must Individually Arbitrate Their Claims on an Individual Basis.

Additionally, the DRP expressly and unambiguously waives Plaintiffs' right to bring a collective, class, or representative action, and, therefore, Plaintiffs must arbitrate their claims on an individual basis only. Parties may "specify with whom they choose to arbitrate disputes." *Stolt-Nielsen*, 559 U.S. at 683; *accord Concepcion*, 131 S. Ct. at 1749 (holding parties may "limit with whom [they] will arbitrate [their] disputes"). Consequently, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684. After all, arbitration "is a matter of consent, not coercion." *Id.* at 681.

As stated above, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt*, 489 U.S. at 478). As with all other contracts "the parties' intentions control." *Stolt-Nielsen*, 559 U.S. at 682 (*quoting Mitsubishi Motors*, 473 U.S. at 626).

Arbitration agreements may not be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an arbitration agreement is at issue." *Concepcion*, 131 S. Ct. at 1746. Therefore, arbitration agreements cannot be invalidated by doctrines "normally thought to be

generally applicable, such as duress or…unconscionability" that are impermissibly "applied in a fashion that disfavors arbitration." *Id.* at 1747. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 1747 (*citing Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753.

As discussed below, *Concepcion* and its progeny hold that, under the FAA, class, collective, and representative action waivers are valid and courts must enforce them according to their terms. In *Concepcion*, the Supreme Court held that California's *Discover Bank* rule against class action waivers in arbitration agreements is inconsistent with, and therefore preempted by, the FAA. *Id.* at 1746-53. The Court found that the *Discover Bank* rule against class action waivers "interfere[d] with arbitration" and the "principal purpose" of the FAA "to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1748, 1750 (*quoting Volt*, 489 U.S. at 478). Accordingly, the Supreme Court held that "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748; *see also id.* at 1750-52 (finding classwide claims change the entire nature of the arbitration proceedings and the agreement to arbitrate).

Although *Concepcion* confirms the enforceability of class action waivers generally, the Ninth Circuit has held that, in employment cases, class action waivers infringe upon employees' rights to engage in concerted activity under section 7 of the NLRA. *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016). Of the circuits that have considered the issue, the majority have concluded that class action waivers do not violate the NLRA. *See Cellular Sales of Missouri, LLC v. NLRB*, 824 F.3d 772 (8th Cir. 2016); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1015 (5th Cir. 2015); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013). Moreover—and importantly in this case--the California Supreme Court has also concluded that class action waivers in arbitration agreements are valid and enforceable. In *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 362-67 (2014), the California Supreme Court directly rejected the argument that class action waivers violate section 7. Further, the United States Supreme Court has granted certiorari to weigh

1   in on the issue in the next term. *See Ernst & Young LLP v. Morris*, 2017 U.S. LEXIS 689 (Jan. 13. 2017);

2   *Epic Sys. Corp. v. Lewis*, 2017 U.S. LEXIS 691 (Jan. 13, 2017); *NLRB v. Murphy Oil USA, Inc.*, 2017

3   U.S. LEXIS 680 (Jan. 13, 2017).

4         Defendants respectfully disagree with the decision in *Morris* because the FAA and the NLRA must

5   be read consistently to permit class action waivers, as the majority of decisions have held.  Applying this

6   reasoning to the DRP, then, Plaintiff must be compelled to individual arbitration. The DRP indisputably

7   contains a waiver of class and collective action claims.  In addition, the DRP provides that Defendants

8   and Plaintiffs must arbitrate only individual claims.  Specifically, the DRP states that, "the employee and

9   the Company agree that: class action, collective action and representative action procedures shall not be

10  asserted, nor will they apply in any proceeding under this Policy." The DRP further clarifies that the

11  Parties will not "assert class action or representative action claims under this Policy; each shall only submit

12  their own, individual claims under this Policy and will not seek to represent the interests of any other

13  person or entity."The DRP expresses the clear, unambiguous intent of the Parties to disallow class-wide

14  claims. The majority rule dictates that the DRP must be enforced according to its terms and the Parties'

15  intent, including the waiver of collective and class-wide claims.  Accordingly, Plaintiffs must be

16  compelled to arbitrate their claims on an individual basis only.

17        **F.**     **Defendants Have Not Waived Their Right to Compel Arbitration.**

18        "A determination of whether the right to compel arbitration has been waived must be conducted

19  in light of the strong federal policy favoring enforcement of arbitration agreements." *Martin v. Yasuda*,

20  829 F.3d 1118, 1124 (2016) (internal quotation marks omitted).  A party arguing waiver of the ability to

21  arbitrate "bears a heavy burden of proof" and must demonstrate three factors: "(1) knowledge of an

22  existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the

23  party opposing arbitration resulting from such inconsistent acts." *Id.* (*citing Fisher v. A.G. Becker Paribas

24  Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

25        First, Plaintiff cannot establish Defendants acted inconsistently with the right to arbitrate.  This

26  case is in its very early stages, and Defendants have done nothing more than file a motion as to the court's

27  jurisdiction, answered the Complaint asserting arbitration as an affirmative defense, and participated in

28

mandatory court proceedings. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270-71 (9th Cir. 2002) (rejecting argument that defendant waived right to arbitrate because plaintiff failed to show how he was prejudiced by defendant's filing of a motion to dismiss for failure to state a claim); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (noting that filing motion to dismiss does not waive right to move to compel arbitration).

Second, Plaintiff cannot demonstrate any real prejudice to him from "opposing inconsistent acts." As noted above, all of Defendants' litigation "acts" since the inception of this action were consistent with enforcing the right to arbitrate. Furthermore, Defendants have not taken advantage of judicial discovery procedures not available in arbitration. At this point, Defendants have not served any interrogatories or requests for production. Finally, any argument by Plaintiff that a stay will deprive Plaintiff and class members the relief owed to them is unavailing as the Ninth Circuit has held monetary recovery cannot serve as the foundation to deny a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Furthermore, where there was "no existing right to arbitration" because the "then-prevailing law of [the] circuit" would have rendered such a motion "futile," there can be no waiver of the right to arbitration. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). Although Defendants disagree with the decision, they recognize that this Court is bound to follow the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016). Under *Morris*, a motion to compel an arbitration agreement including a class action waiver would be futile. For that reason, Defendant did not file a motion to compel arbitration at the onset of this case.

Defendants predicament here is the same predicament that Defendant Ernst and Young had in the case *Richards v. Ernst & Young, LLP* 744 F.3d 1072 (9th Cir. 2013). In that case, Ernst & Young litigated a wage and hour class action for six years before finally asserting the right to compel arbitration. Ernst & Young argued that it did not seek to compel arbitration at an earlier time because doing so would have been futile in light of California's hostility toward agreements that preclude class arbitration. According to Ernst & Young, enforcement of the arbitration provision became possible only after the Supreme Court's decision in *Concepcion*, 131 S.Ct. 1740, 179 L. Ed. 2d 742 (2011). Ernst & Young argued that under these circumstances it cannot be deemed to have waived its arbitration defense. The district court

1   the Court held that Ernst & Young waived its right to compel arbitration. *Ho v. Ernst & Young, LLP* No.

2   5:05-cv-04867-JF 2011 U.S. Dist. LEXIS 106658, at *13 (N.D. Cal. Sep. 20, 2011). However, the Ninth

3   Circuit disagreed and reversed the district court's decision, holding that Ernst & Young did not waive its

4   right to arbitration.

5          Since the filing of Defendants' motion to dismiss Plaintiff have consistently asserted that

6   Defendants have waived their right to compel arbitration. Further, as discussed in more detail *below*, on

7   January 17, 2017, the U.S. Supreme Court granted certiorari in *National Labor Relations Board v. Murphy*

8   *Oil USA* (No. 16-307), *Epic Systems Corp. v. Lewis* (No. 16-285), and *Ernst & Young LLP v. Morris* (No.

9   16-300) to decide, on a consolidated basis, whether mandatory arbitration agreements with individual

10  employees containing class- or collective-action waivers are enforceable under the FAA, or whether they

11  violate certain portions of the NLRA. The Supreme Court will likely be issued within a year per the

12  Supreme Court's customary practice after granting certification of a petition. Thus, it is appropriate at this

13  time for Defendants to bring this motion to compel arbitration to avoid any claim that it waived its right

14  to compel arbitration in case the state of the law changes.

15         Here, Defendants did not act inconsistently with the right to compel arbitration, there is no

16  prejudice to Plaintiff, and Defendant's failure to file a motion to compel arbitration at the onset of this

17  matter was based on Defendant's belief that doing so would be futile. Certainly, if the Ninth Circuit in

18  *Richards* held that there was no waiver of the right to arbitrate after Defendant litigated a case for six

19  years, this Court should also find that Defendants have not waived the right to arbitrate.

20         **G.**     **If the Court is Not Inclined to Compel Arbitration, It Should Stay the Civil Action**
              **Pending the Supreme Court's Decision Regarding the Enforceability of Class**
21            **Waivers in Arbitration Agreements.**

22         "A district court has inherent power to control the disposition of the causes on its docket in a

23  manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX,*

24  *Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). When considering whether to stay a proceeding, the district

25  court must consider the competing interests that will be affected. *Id.* This includes: (1) the possible

26  damage which may result from granting of a stay; (2) the hardship or inequity which a party may suffer

27  in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying

28

1    or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.*

2    The Ninth Circuit has held that "a trial court may, with propriety, find it is efficient for its own

3    docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of

4    independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593

5    F.2d 857, 863 (1979).

6    The U.S. Supreme Court has granted certiorari in *National Labor Relations Board v. Murphy Oil*

7    *USA* (No. 16-307), *Epic Systems Corp. v. Lewis* (No. 16-285), and *Ernst & Young LLP v. Morris* (No. 16-

8    300) to decide, on a consolidated basis, whether mandatory arbitration agreements with individual

9    employees containing class- or collective-action waivers are enforceable under the FAA, or whether they

10   violate certain portions of the NLRA. The Supreme Court's decision will resolve a split in authority among

11   the federal courts of appeal regarding the enforceability of employment arbitration agreements containing

12   class or collective-action waivers.

13   The United States Supreme Court will hear and decide the cases in the 2017 term, which begins in

14   October. The impending decision by the Supreme Court of the United States regarding the enforceability

15   of class- or collective-waivers in arbitration agreements directly impacts a threshold issue in this case and

16   will greatly affect the outcome and disposition here.  Specifically, if a class waiver is found to be

17   enforceable, Plaintiffs' class claims will be dismissed and Plaintiffs will be required to arbitrate their

18   claims on an individual basis only.  Therefore, without a stay, Defendants "will be required to defend a

19   putative class action – engaging in expansive discovery and possibly class certification briefing – that may

20   be rendered moot and unnecessary" by the *Morris* decision.  *Larroque v. First Advantage Lns Screening*

21   *Sols., Inc.*, No. 15-cv-04684-JSC 2016 U.S. Dist. LEXIS 139 (N.D. Cal. Jan. 4, 2016).

22   Because the issue of enforceability of class and collective action waivers will be decided in the

23   2017 term, the length of the stay will be limited.  Here, Plaintiffs will not be harmed by the stay because

24   this action is still in its early stages and the parties have not conducted any discovery, other than initial

25   disclosures.  Conversely, if a stay is not granted, Defendants (and Plaintiffs as well) will be irreparably

26   prejudiced, as the Parties will be forced to spend substantial time and resources litigating a class action,

27   while also wasting judicial resources, on class claims that Plaintiffs may not be entitled to bring.  In short,

28

the potential prejudice to the Parties, and to Defendants in particular, that would result if a stay is not granted vastly outweighs any prejudice Plaintiffs potentially might suffer as a result of the stay. *See, e.g., Whitworth v. SolarCity Corp.*, No. 16-cv-01540-JSC 2017 U.S. Dist. LEXIS 73842, at *10. (N.D. Cal. May 15, 2017) (granting stay in wage and hour class and collective action pending the Supreme Court's review of the Ninth Circuit's decision in *Morris*); *McElrath v. Uber Techs., Inc.*, No. 16-cv-07241-JSC 2017 U.S. Dist. LEXIS 48419, at *15-18; *Mackall v. Healthsource Global Staffing*, Inc., No. 16-cv-03810-WHO, Dkt. No. 55 (N.D. Cal. Jan, 18, 2017); *Echevarria v. Aerotek, Inc.*, No. 16-CV-04041-BLF 2017 U.S. Dist. LEXIS 50944 (N.D. Cal. April 3, 2017).

Thus, this Court should stay this Action pending a decision in *Morris*.

## V.   CONCLUSION

Based on the foregoing, this Court should grant Defendants Motion to Compel Arbitration of Plaintiffs' wage and hour claims and stay the class claims pending resolution of the arbitration. Alternatively, this Court should stay the entire Action pending the Supreme Court's decision in *Morris*.

Respectfully submitted,

Dated:  June 16, 2017                    JACKSON LEWIS P.C.

By: /s/ Mia Farber
        Mia Farber
        Damien P. DeLaney
        Vi Applen

Attorneys for Defendants
BEHR PAINT CORPORATION and
BEHR PROCESS CORPORATION

4827-7878-4329, v. 7

CASE NO.:  3:16-CV-07036-MEJ            25     DEFENDANTS' NOTICE OF MOTION AND MOTION
                                                TO COMPEL ARBITRATION OR ALTERNATIVELY
                                                TO STAY ACTION; MEMORANDUM OF POINTS
                                                AND AUTHORITIES IN SUPPORT THEREOF